I'd like to reserve seven minutes please. Be sure to speak into the mic. I was told that this lifts and lowers. Oh, I see. I'll just make do. No, it's actually fine. May it please the court, my name is Gregory Auburn. I'm a counsel for the plaintiffs. I'm here with my law clerk, Mr. John Patrick Dowdle, who is a 2L at the University of Washington. As the court knows, I took this case shortly before it was dismissed and since that time I've tried to find a way to tie together all the various and disparate elements of this case in a way that is succinct and comprehensive and balances breadth with depth and I don't think I really dialed that in until I wrote the reply brief. So I would ask the court if there's any aspect of this case that it finds underdeveloped, I would invite it to and its clerks to review the reply brief as much, if not more so, than the opening brief. There are two issues that I'd like to argue on the governing plats for the Lummi Island Scenic Estates subdivision and the Lummi Island Scenic Estates bylaws is enforceable and then the second is whether or not there's a genuine issue of material fact on the fiduciary duty issues such that my client should have a day in court. Just to narrow the issues with regard to the first aspect, the real estate questions, the issue is not whether or not LISIC has to cease to exist or whether or not it should be disbanded. The issue is whether or not it can compel people to be members of its organization. Both parties also agree that compulsory memberships, if they are enforceable, must arise out of the governing plats. So there's no equitable servitude arguments or no way to equitably rewrite the plats. And then finally, both of the parties agree that the expiration clauses should at least apply to six of the eight covenants. The defendants argue that they don't apply to the last covenant, the last two covenants, but the last one is the one that matters for us because they say that it is technically not a restriction. So the only issue to be determined to be determined is whether or not it's a restriction and whether or not that should matter. There are three in my mind irrebuttable responses to that. The first of all, it's a logically inconsistent position to take because the plats say all lots, tracts, parcels of land shall be subject to the following restrictions for a period of 25 years. They want the first part of that sentence to apply, but they don't want the second part of the sentence to apply. Secondly, it is a restriction. It's a restriction by the conventions that were used in the real estate, Washington real estate, in 1959 and through to 1965 at least. And that's evidenced by the defendants' own cases. They cite Jensen v. Lake Jane Estates. Lake Jane Estates was recorded in 1959, so it's a contemporary of Lysak, and it was recorded through an instrument that said restrictions at the top and then the following 13 restrictions ended with a restriction almost identical to the language that was used here in 1965. Ginsburg. Wouldn't it frustrate the homeowner's interest, as stated in the Jensen case, if Lysak were held not to exist at all? Fisher. No, Your Honor, for several reasons. First of all, I would like to point out that the homeowner's collective interest, that doctrine that's used, is used for the purposes of interpreting a governing plat, interpreting the language that's in the governing plat. So if the question is whether or not it's a restriction, which is the only difference between the two parties, I don't see how that even informs that question to begin with. But it's difficult to say, first of all, that that doctrine ends with that language, the collective interests of the community. It doesn't define what a community is. It doesn't define what a homeowners association that exists solely for the purpose of providing a utility for a minority of the property owners is in the collective interest of all of the property owners, especially when the majority has to pay for something that only the minority gets to use. And the majority will never be able to use because they've been told, the homeowners association has been told you can't add on additional water connections until we've approved an overhaul of the system. And the system's never been overhauled, even though DSHS has told them to for years that they could take his place. It can be passed over. It can actually become a public utility, which is what happened over in Ocean Shores. But I don't want to opine on that too much because it's not in the record, but that's what happened in Ocean Shores, which, by the way, was founded by the exact same people who founded LISIC. And then, in addition to that, I mean, since the only thing is that it provides is water, it can still provide water. In fact, it's required by Washington State to continue providing water to everybody that's in the service area and people who are already connected to the water system aren't decidedly within the service area. So the idea that they could suddenly disconnect people's water because they can't compel memberships anymore is a canard and it doesn't hold up under Washington State law. So and then finally, it doesn't matter whether or not it's a restriction according to, the defendants say some but not all dictionary definitions because it's a restriction under the platter's own definition. They said all lapsed tracks and parcels of land should be subject to the following restrictions and then they listed eight restrictions that they thought were restrictions. They also said the same thing in the bylaws and in bylaws it's even more explicit. They said the following eight restrictions. It says restrictions beneath it. It has a heading and then it includes the same language that's in Covenant Number 8. Let me just jump in with a question if I can. A lot of what makes sense of why the drafters would have included this 25-year sunset it does kind of but you know I can't think of a good explanation for why that would be rational but apparently you think that it makes perfect sense so maybe you can help with that? I can. First of all I'd like to say you know the district court proposed a story and the defendants have a story. We have a story too and the reason why we didn't focus on that originally is because the story isn't supposed to matter under Washington State canons of construction but in before or excuse me after Division 2 was recorded Division 3 the land for Division 3 was given to the Lummi Island Scenic Estates group by a company called Lilco who's a plaintiff in this case. Lilco had a reversionary clause such that if they were to if LICE was not able to sell that property it would revert back to Lilco so why would they want an encumbrance on that property when they already had owned that property without an encumbrance so they put the 25-year expiration clause on there and as the court can see when it looks at the first two and that's in the record by the way I'm not I'm not talking out of school here we've added that in the record the first two divisions are clearly unsophisticated compared to the following divisions when Lilco became a part of the organization. So the reason why the district court's decision was erroneous is because it used considerations that were ulterior to the contract for the purposes they're designed for the purposes of interpreting the contract in order to essentially supplant the language of the contract and the Washington State Supreme Court has repeatedly admonished lower courts for doing exactly that in fact the first case in which they introduced that it's called the context rule and they introduced them Berg versus Houdisman they also circumscribed the powers to use that they said parole evidence is not admissible for the purpose of adding to modifying or contradicting the terms of a written contract it is the duty of the court to declare the meaning of what is written not what is intended to be written and they said that again in Hollis versus Garwald where they first applied that doctrine to plat interpretation and then in 2004 by in Hearst Communications versus Seattle Times Company they they started to register their concern that this is being abused and they said our holding of Berg might have been misunderstood as it implicates the omission of parole evidence we impute an intention corresponding to the reasonable meaning of the words used but the most instructive case of all and if there's one case I was stranded on a desert island with a single case it would be Wilkinson versus Chihuahua because it was it was the opinion was rendered in 2014 that summarizes all the former decisions it's obviously recent and it's comprehensive and Justice Stevens there said we however do not consider evidence that would very modify or contradict the written word or show an intention independent of the instrument and that's exactly what the lower court did it found an intention that was independent of the instrument and here there's an explicit 25-year expiration clause so it kind of creates this aberration in the case law where for the explicit language that's within the contract in favor of ulterior considerations for instance the subsequent contact of the parties excuse me my mouth is really dry so if the court were to reverse that decision it could do so knowing that it's reversal is squarely within the parameters of Washington state law and that it's merely enforcing the the facial terms of the contract contract but if it were to affirm that decision it can kind of continues that aberration and then the federal courts have to abide by that decision while the state courts abide by a different decision and that's not going to be reconciled until another 9th Circuit panel comes along and says we were wrong or the Washington State Supreme Court explicitly calls that out the other thing that the district court placed some reliance on was the fact that what was it in like 1990 or so when this 25 year sunset provision expired that nobody seemed to act as though it in fact governed and for first quite a bit of time afterwards why why isn't the court entitled to rely on kind of the subsequent actions of the parties who otherwise would have been in a position to say hey wait a minute what's going on right right absolutely it's an important question but the answer to it is several fold first of all it's not a consideration that Washington State recognizes but more importantly in 1990 they called a general meeting and they told the public that they had been collecting dues for so long that their right to collect dues and now become perpetual that's in the record we saw what happened in 2012 when somebody launched a campaign to notify the property owners about this expiration they immediately launched their own disinformation campaign they told them that they had filed court documents that that's just flatly untrue they said that they want a court case on the strength of those documents totally untrue so under the the adverse domination rule when a when a board member is telling property owners taking a position and telling property owners one one position they don't have to have noticed that the board members are wrong how is that responsive to the question I put to you I'm talking about people in 1990 who presumably had an interest in saying thanks for this bill but I don't have to pay you anymore those people if in fact the instrument hadn't had been intended to mean what you say it meant then all of those people would have risen up decades ago and said we're not paying anymore right and the district court says because nobody did that maybe that shed some light on what that provision was really supposed to mean right and they're being deliberately misled it's my point and I mean if you're a lay property owner and the homeowners association who by the way it's a matter of record that they've spent $643,000 on this litigation do you want to take on your homeowners association who's insured and who's telling you that they file court documents and extend these passive some esoteric legal document they say that this document is binding and by the way we've beaten people in court before with this document you do you really want to take them on or do you want to take them on and you're paying them $643,000 or $700 a year I mean I would I would imagine that that's the that's the that's the general response but in addition to that they have been telling people at those at those annual meetings that they that they the right to collect dues is perpetual now I'm sorry it looked like you I was saying you begrudge them for spending money defending this lawsuit no but but I'm just trying to explain illustrate why it would be such a burden for any particular homeowner to try to what's your best argument in this case there's a there's a thousand of them that I see what's the best one the plain and ordinary meaning of the words that were used in the contract and the case law determined by the Washington State Supreme Court in Wilkinson versus Chihuahua on the real estate issues Oh with regard to fiduciary duty issues it would be the case of risk versus on which is probably the most comprehensive detailing of the duty that's owned by a homeowner so owed by a homeowner association to its constituents and the board to its constituents and there they said that the it merely has to be reasonable the in fact the it can be reviewed for whether or not it's reasonable and they said good faith is not even enough the defendants say that rance risk stands for the proposition that a court should not interject its decision-making for that of the board but that's exactly what it did in risk in fact it it substitutes decision-making for that of the board and then affirmed an award of $200,000 so the only issue you know on with regard to fiduciary duties issue is whether the plaintiffs can muster a single genuine issue of material fact to show that the defendants actions were not reasonable and the plaintiffs have supplied ample evidence the defendants have violated the terms of the DWS RF loan the then Washington State statutes the most important example of that I think is that they omitted the cost of this failing water system from the reserve report in violation of RCW 64 dot 38 dot 0 7 0 this is their 10k this is their their report this is their disclosure to property owners to let them know whether or not they're going to be on the hook for massive assessments in the future and they didn't even include this multi-million dollar failing capital asset in that report to notify these property owners that they're going to wind up having to pay for that so the property owners are being woefully misled about that they also took money other reserve funds in violation of RCW 64 dot 38 dot 0 7 5 which ironically is the same statute they used to justify taking it out but they didn't follow any of the conditions you have to pay back for one thing you have to notify everybody by first-class mail and then it has to be for only only for surprise costs and then they they devised kind of a self-serving fee regime that was going to charge everybody retroactively for the things that they didn't pay they didn't use the utilities that they didn't use and then pay themselves for the utilities that they did use and that they did pay for at the time whether you know the group that you represent ever try to get elected to the homeowners association they were board members get a controlling interest by discussing all of these these failings with other residents and trying to sort of administratively deal with it and I ever try to do that yes that your honor they actually were board members at the time that this started and they were ousted from the board by this by this small group of full-time property owners that has kind of a disproportionate influence on the board because most the properties that there's no buildings on them as they're completely undeveloped they're owned by people all across the United States homeowners association board get elected by the members by the members that show up at those meetings but this is not this is not like a Southern California Country Club this is this is a bunch of hodgepodge of trailers in the woods and and pieces of land in the woods and on rocky slopes and most of these properties are on in fact we submitted evidence of this most of these properties are owned by people all across the United States and so they're to show up at a board meeting to actually vote the policies that they want and in fact most these policies are proposed by the board and then people have to vote them down to be in with so it's just impractical for right but if they felt overly afflicted they could show up and vote I suppose that that's true but it would hypothetically it would have to make economic sense to do that I mean I personally wouldn't go there to try to overturn a vote like that even if I was being fleeced for money that improperly and I think that's why there's a role for the court in this situation because it's just a tyranny of the majority of people that are showing up and often these are done through special votes so they call a special vote I'm very short notice it's just the people who I mean nobody's gonna buy a plane ticket to go to a special vote so it's just the people that are there that are essentially doing something about that but most importantly the they they gave these people false votes they they gave them a Hobson's choice between two fee regimes that are identical so they were totally self-serving fee regimes if a director can game a vote so that it results in the directors a desired outcome no matter what the people vote then it's not a real vote anyway so I mean that would I think be the most important answer to that can I just point out your time you're down about two and a half do you want to save that oh yes I thought I thought that was oh I see okay I do will understand that thank you may it please the court my name is Jessica Goldman I'm an attorney at the summit law group here in Seattle Washington and I represent the defendants below the Lummi Island Scenic Estates Community Club Lysak and several of its current and former volunteer board members if I may I'd like to try and address several of the questions that your honors have raised judge Nelson you initially asked if the argument that is being made here by the plaintiffs would frustrate the homeowners interest and under Washington law we don't vote on determining what that is but what that goes to when you're talking about a development where there are plats and there are interrelationships and obligations owed between the community members and a homeowners association is the idea that all of the homeowners buy in with an expectation of what they're buying into and every single one of the owners in this community including every single one of the plaintiffs has this information in their deeds the information that is provided in the plats which requires them to be subject to governance by the bylaws and the articles of incorporation of the homeowners association mr. Albert responded to you well it could just become a public utility that's how we could solve this problem the bylaws specifically prohibit that the bylaws of this community say it cannot become a public utility judge Watford you asked about what is the reason for the 25-year restriction and I disagree with mr. Albert that's a relevant question because the job of the court here is to figure out what the intent was of the developers what was intended by this language that was used many many years ago no one is alive to tell us we have their instruments only to make that judgment call and I think that what you see commonly in restrictions in developments like this is this idea that you know we don't know about some of these restrictions and how they're going to be applied what the norm is going to be in 10 or 20 or 30 years so you commonly see you know the distance from the street the requirements for what roof material is supposed to be made from whether an individual or a married couple can constitutionally be restricted to homeowners to to living in the community all of those kinds of decisions about the use of property are typically made by democratic processes within these homeowners associations so that I think it appears to be from the language they used in the comprehensive review of all of the words that they use the intent here because we know just the problem is that the same word restrictions is used in both places and you have to parse the meaning of the two in a way that's not natural at all to arrive at the position you're taking right I agree it you do you do have to do that and the way you get to that your honor is by following the Washington law which dictates that you look at the document in its completion in its completeness I will note that there's been no discussion here today of they do not include that language at all so there is no argument that there's a word restriction that anything is restricted whether it's a restriction or some other type of a covenant in those first two those first two plats so remind me the same people drafted both sets yes your honor this development was created by a partnership and we have the partnership agreement it is in the record that the court has and the partnership agreement explains that every single one of these plats is not made in the name of the individuals who signed but it's made in the name of the partnership and the dominant partner was Mocha Smith and he signed all but the first of the plats he also signed the articles of incorporation he was on the initial board of directors of the homeowners association he signed the bylaws and then after this community all of these plats are recorded then we have this existent homeowners association which follows through on the promises made in the plats Lysak then after the tenth plat deeds the common areas to the homeowners association and there we have from then on the governance by this homeowners association of the community and you asked your honor about 1990 1990 is this magical number and I'd like to just correct that not correcting you but correcting the plaintiffs that it is a series of numbers that are it's around that time well it's around that time over a period of four years so what we have then is staggering terminations under their theory of the right of governance and the right to obtain the the water service that's promised but we have your honor and this is at SER 117 we have in 1985 the lawyer for the homeowners association analyzed this and concluded that the restrictions that were referred to did not did not mean the existence rights of the homeowners association or the obligations of membership and that was provided to the members so that's SER 117 that's in 1985 as the issue is arising is do we have a 1990 issue here and so we have the lawyer saying no we don't nobody on the board is a lawyer they hire a lawyer to provide that advice so I think that that was made pretty clear and that was publicly available it's a document that was produced by the plaintiffs in this okay can I ask you just a factual question before yes your honor to your other legal points am I right in understanding that the vast majority of this fee that everyone is required to pay it really does go to this water that's correct your honor but that is your opponent was saying it's really this tiny not tiny but a minority of the property owners who even get any benefit from that because most people don't have a water hookup and can't get one now that the first part is right the second part is not right there is no evidence in the record before the court that anyone has ever been denied a right the request to connect to the water system so what you have here is many lots that are not developed folks have purchased them they come to visit it's a beautiful community on a lovely spot but they have yet to purchase a home there or they just build a home there those individuals don't need water when they need water they can make application and there is literally nothing in the record before this court that suggests that anyone has ever been denied that so it is that is the way that this community has structured itself you're not going to have to pay a catch-up fee eventually down the road for 20 years of missed fees misdues that everybody else has been paying for the upkeep of a water system which is what it is it is of a size that does not change irrespective of the number of homes that it serves so the the right in the plats which they claim expires for the ones that come three through ten it says in the plats you have a right to connect to the water system and that right remains today for anybody who wishes it to be the case and when they make that application and the information that is provided to the court indicates the number of permits that were available as of 2011 I think frankly that's the last piece of evidence that was provided by the plaintiffs regarding that issue this house with their homeowner members given a choice to vote against the imposition of a repayment fee on all users shouldn't have been given that choice your honor they were all of these decisions that are challenged here by the plaintiffs were presented to and the record explains this to the members in their annual general meetings many of the plaintiffs were part of that process many of the plaintiffs supported the views as is demonstrated in the record that they now challenge and two of them were board members and those individuals advocated for policies which they now contend are unlawful but to answer your question your honor these are decisions that have been presented to the how much is being paid by dues members to support the water system which is an asset that belongs to the homeowners association so they're not being paid the folks who actually receive water service they pay additionally they pay for the amount of the number of gallons of water that they use but everybody pays for this asset which belongs to the community which is a selling factor when each of them goes to sell their homes that they have a right to simply request and lock into the water system that belongs to the community I wanted to correct Mr. Albert mentioned that decision was made by the board about reserve funds and sending money back to people that issue was not appealed so there are there were a slew of claims a 70 page complaint in this lawsuit and one of the claims had to do with folks who had bound lots where they this is a deep rocky mountain and sometimes it's hard to have sufficient land with one lot to to create a drain field to support a house so sometimes folks would have two lots they would combine them and build a house and and so one of the issues that is not appealed had to do with that that that decision that was made democratically by the homeowners association so this issue of reserve funds is not before the court I wanted to judge you asked a question about well can't you just get yourself democratically elected if you disagree with the positions that are being taken by the majority of the homeowners who show up and form a quorum and vote and the answer is that they did they did and the lead plaintiff the one who has been explained to us is the source of the lawsuit he was removed from the board of directors and the record before the court demonstrates that most of the people advocating for his removal of the folks sitting next to him they're the plaintiffs in this lawsuit so he was democratically elected and then he was democratically removed and that's now been many many years ago and so the issues continue to arise and this is an issue of democracy these are people who can make decisions pursuant to their bylaws and their articles of incorporation regarding how they want to I want to briefly touch on the issue of fiduciary duty and this is this is a claim that's made against individuals these are homeowners who live on this island some of them don't live on the island they have a home there that they visit occasionally but they have served as members of the board of directors and they are being sued in their individual capacities for these allegations of a fiduciary duty under our homeowners association act the law in Washington State allows it creates kind of a superstructure that's a default all of these rules and regulations unless the homeowners association decides to do it differently and there's a lot of flexibility of what you can do differently that that satisfies the law so the standard of fiduciary duty the obligations that are owed by board members that set forth in the homeowners association act by its terms can be changed and it has been changed here and so in the bylaws and this is at SER 625 it provides directors shall not be individually liable except for a director's own bad faith dishonesty or fraud so that's the standard and that's a pretty common standard when you're talking about volunteers serving on on the board of directors it's a high high burden that the plaintiffs need to and could not satisfy by producing any quantum of evidence that would establish any of those elements if I may I'd like to just talk briefly about the plats as I said you know we didn't really hear much about divisions one and two and so it's pretty clear and I would assume conceded at this point by the plaintiffs that the language the hook that they're trying to to destroy the homeowners association rights and duties for divisions three through ten it lacks that language altogether the intent of the member of the of the partnership that created these plats we look to the language that they use and we have several types of documents to look at we have of course the nine plats which were signed all but the first one by Mr. Mokshus Smith on behalf of the we have the articles of incorporation and the articles of incorporation are not extraneous evidence they are not context they are part of the plats they are incorporated by specific reference knowing as the partners did that the first several divisions there was no homeowners association yet but it was clearly anticipated knowing that there were no articles yet but requiring and putting every owner on notice that they were buying into a community that would be governed democratically pursuant to the articles of incorporation we also have the bylaws and the bylaws to are incorporated by specific reference into the plats those bylaws are actually enacted right before the very last plat and again those were signed by Mr. Mokshus Smith and they provide the democratic superstructure for how members of this community will make decisions how they will be elected to the board how the dues process will work how the majority will make decisions about the dues and then lastly the last set of documents we have are the deeds these are the deeds through which the partnership which owned the common areas that were excluded the reserves as it's called in in the plats how they deeded these properties to the homeowners association and to the degree there was any dispute any question about this holdings Inc that was mentioned initially and contemplated to be the name of the HOA and which never came to fruition it's confirmed by the fact that once they're done with their plats the partnership turns around and bequeaths deeds all these properties these these reserve areas including the lake and the water system components to Lummi Island Scenic Estates Community Club and and this happens after the final plat is is recorded Washington's rules of here and they govern the district court below the court is directed to construe this instrument and consider it in its entirety and by entirety that it means the articles in the bylaws because those are incorporated by reference it's to give words their ordinary usual and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent and I think that goes to your question your honor about well what do we do with this kind of strange structure of a sentence here about restrictions and we go to the language that's actually used comprehensively and we consider that with the bylaws and the articles which were incorporated in and while the first initial divisions we didn't know what they were going to say because they hadn't yet create been created by the last five everybody knew what the articles of incorporation said because they had been created and so the language doesn't change the restrictions language doesn't change it continues which demonstrates that there's no conflict from the partnerships perspective between that and the provisions that they are setting forth now in the in the articles which are available and uniquely in Washington law for a planned community as as distinct from the insurance contract case that you were discussing earlier today or or any other run-of-the-mill contract the court is directed to place special emphasis on arriving at an interpretation of the plats that protects the homeowners collective interests this is a community which is represented in only very small measure by the plaintiffs who are before this court by the appellants and lastly the court is allowed to use extrinsic evidence of intent to consider the language that's actually used and that matters because the word restrictions is not actually used in divisions one and two so for the court as was the case for the district court to rule that those restrictions in that those first division somehow expired it would have to be adding language that is not part of those initial plats can I can I jump in and ask yes please unrelated question in some ways and maybe this is in the record but I just don't know if you all exhausted efforts to try to mediate resolve this case through mediation has that been tried and failed and it's just we're beyond that point now because this does strike me as a case that this is not you know our court here is not the ideal form to get something like this resolved so I'm just asking you I'll ask your opponent the same thing has that been tried and it's we're beyond that point because we happen to have some of the best mediators in the country who are available for free to help resolve these sorts of intractable disputes but I don't we wouldn't want to waste their time if you guys say no we were beyond that well yes I think the answer is yes we're beyond that and that frankly your honor the process for resolving these disputes is not in a court that's the problem here that's the problem these folks are on the losing end of Democratic votes they don't like decisions that are being made in the open by their fellow fellow community members under the articles and the bylaws and that happens that's life right I mean that's the way it goes when you're part of a democratic process and this is something that Judge Lassnick repeatedly pointed out in his rulings below that this mechanism of coming to federal court with a federal RICO lawsuit let me remind you your honors we're here before you and not in the still pending Superior Court action up in Whatcom County because these plaintiffs filed a federal racketeering lawsuit so no your honor I don't think at this point that is the appropriate mechanism for resolving them this is an issue of law this is an issue of what was intended based on the language that these this partnership used in creating these communities so so I think respectfully we're beyond that that's fine that's why we have courts help you all try to resolve these kind of disputes peacefully when you can't work it out amongst yourselves and we will you'll get a decision from us if need be yes yes thank you your honor okay so I wanted to just briefly as I see my time is running out unless there are any other questions quickly talk about the restrictions are followed by a list of eight paragraphs and the first six are clearly restrictions you can't do this on your land you can't do this on your land you can't do this on your land but then we get to paragraph seven and eight and those aren't restrictions at all so for example paragraph seven says that each lot is entitled to a hookup that's a right and some of the members of this community haven't taken advantage of that right because they don't have a or in the case for example of mr. Ortego he's decided to put out buckets in his lawn and collect rainwater which he's entitled to do so that's a right that's an affirmative right it's not it is it doesn't restrict anything or anybody from doing anything else paragraph eight then has these four intertwined provisions which are also found in divisions one and two which create this interrelationship among each of the homeowners in all of the divisions and are not restrictions that prohibit them from doing anything thank you counsel thank you your honors we'll hear from counsel for the plaintiffs in rebuttal you have about two and a half minutes and I assume you're are you in agreement with your opponent that we're beyond any point that mediation not at all your honor in fact the the plaintiffs originally when we provided testimony this in fact they went to the board and they said that they would be bound by a vote of the community if the board would just put this to a vote of the community and they refused to do so we have given witness testimony to that effect by a member who was on the board who was no friend of the plaintiffs at the time so that's not true there's been no attempt to mediate this case by the way with regard to divisions one and two divisions one and two don't contemplate a relationship with Lysak at all they contemplate a relationship with the holding company there was no there's no evidence whatsoever that anybody ever anticipated there to be there that there was going to be a homeowners association the two people who signed all of divisions one through five the Millons were gone from the project before homeowners association was contemplated before there was any evidence of a homeowner associate association was going to be contemplated and so there's no there's no reason under Washington state law to believe that that was going to be their intent at the time so regardless of whether or not it would frustrate the plaintiff that the defendants have a story and they and they've told several stories and they've told you facts about the community that aren't upheld by the record in any way but this issue isn't about a story this issue is about plat interpretation and the Washington State canons of construction and plan interpretation so I would ask the court that before I normally wouldn't ask this one it was my clients who filed this in federal court but there's no more federal claims I don't know exactly what the the original lawyer had planned for the Rico claim but he died and and and that's over with before this court decides to affirm that decision if it remands it it could do it squarely within Washington law but if it's going to affirm that decision I would suggest that it or invite it to certify this to the Washington State Supreme Court with regard to the divisions expiring between 80 1985 and 1990 that's a that's a inherent part of the covenants no matter what they agree that the expiration clause applies to six of the eight covenants so the idea that it it shouldn't apply to two of them because they were going to inspire but expire between 18 excuse me in 1985 and 1990 it just doesn't make sense within that context I would like to join with Judge Watford in indicating that I think mediation could resolve it these people have to live together in the same place if that were possible I think that you might get a long lasting solution perhaps so I would I would invite a and the votes of the community that that have been proposed have never happened as has been very clear from the record this is Soviet style obstruction of a of a falling apart infrastructure and there's never been an attempt to notify anybody about any of this okay Thank You counsel appreciate the arguments this morning the case just argue will be submitted
judges: D.W. Nelson, Watford, Pregerson